

NUMBER 13-13-00253-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                        Appellant,

v.

DAVID VILLARREAL,                                                          Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# OPINION

**Before Chief Justice Valdez, Justices Benavides and Longoria**
**Opinion by Justice Longoria**

This is an interlocutory appeal in a case involving a mandatory blood draw. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). The trial court granted a motion to suppress filed by appellee, David Villarreal, the defendant who is charged in

the underlying case with driving while intoxicated ("DWI").  *See* U.S. CONST. amend. IV;

TEX. PENAL CODE ANN. § 49.04 (West Supp. 2012).  The State now appeals the court's

ruling by one issue.  *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West Supp.

2012) (authorizing interlocutory appeal of order granting motion to suppress); *State ex*

*rel. Lykos v. Fine*, 330 S.W.3d 904, 915 (Tex. Crim. App. 2011) ("In Texas, the standard

for determining jurisdiction [of an appellate court] is not whether the appeal is precluded

by law, but whether the appeal is authorized by law.").  For the reasons set forth below,

we conclude that the trial court did not abuse its discretion in granting the motion to

suppress.

## I. BACKGROUND

The relevant facts are not in dispute.  The police arrested appellee for DWI.  *See*

TEX. PENAL CODE ANN. § 49.04.  At that time, the police ascertained that appellee had

three prior DWI convictions.  After appellee refused to participate in a field sobriety test,

the police transported him to a hospital for a blood test to determine his blood-alcohol

content.  Appellee refused to consent to the blood test.  The police did not have a

warrant for it, and the State concedes that there were no exigent circumstances.  The

test showed appellee was over the legal limit.  *See id.* § 49.01(2)(B) (West 2011).

Appellee was subsequently charged with third-degree felony DWI.  *See id.* § 49.09(b)(2)

(West 2011).

Appellee filed a motion to suppress.  *See* U.S. CONST. amend. IV; TEX. CODE

CRIM. PROC. ANN. art. 28.01, § 1(6) (West 2006).[1]  The trial court held an evidentiary

---

[1]  In his motion, appellee argued five grounds for relief.  First, he argued that there was no valid warrant, reasonable suspicion, or probable cause for the search and seizure in violation of the Fourth Amendment to the United States Constitution and Article One, Section Nine of the Texas Constitution. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.  Second, he argued that because he "was illegally

2

hearing on the motion, which it granted, and on the State's timely request, *see State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006), the court entered the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. The court finds that the parties stipulated that "Mr. Villarreal was stopped and arrested for DWI on March 31, 2012. At that time, he was taken and blood was drawn without his consent and without a warrant. There is a blood test showing a .16 grams of alcohol per hundred milliliters of blood. There was no consent, no warrant." (RR vol. 1, p. 3).

2. The court finds that the Defendant narrowed the focus of his motion, and represented as the sole basis of such motion, his claim that "taking a blood draw without a warrant [is] a violation of the 4th Amendment" (RR vol. 1, pp. 3–4), such that he abandoned any claim that the Defendant was illegally arrested for DWI.

3. The Court finds credible Officer Gary Williams' testimony that, after he arrested the Defendant for Driving While Intoxicated, the Defendant refused Officer Williams' request for a blood sample. (RR vol. 2, pp. 7–8).

4. The Court finds credible Officer Williams' testimony that the Defendant appeared to be intoxicated based on his red watery eyes, slurred speech, and swaying back and forth. (RR vol. 2, p. 5).

5. The Court finds credible Officer Williams' testimony that, based on a review of the Defendant's criminal history suggesting reliable information from a credible source that the Defendant had three prior DWI convictions, he then took the Defendant to a hospital and collected a blood sample from him. (RR vol. 2, pp. 8–9).

6. The Court finds credible Officer Williams' testimony that he could have gotten a warrant for the blood draw and there were no exigent circumstances that would have prevented him from getting a warrant. (RR vol. 2, pp. 9–10).

---

detained but not arrested, there was no deemed consent to the taking of a blood specimen under Section 724.011" of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.011 (West 2011). Third, appellee argued that the "officers failed to give . . . [him] the required statutory warning under Section 724.015" of the Texas Transportation Code. *See id.* § 724.015 (West Supp. 2012). Fourth, appellee argued that he did not "voluntarily, knowingly, and intelligently consent to the blood test." Fifth, appellee argued that if his "blood was taken under the authority of a statute, that statute should be deemed unconstitutional."

7. The Court finds that the Defendant conceded at the suppression hearing that the arresting officer did nothing wrong in connection with the arrest and blood draw, except to the extent of Defendant's constitutional challenge to the mandatory blood draw statute. (RR vol. 2, p. 22).

## CONCLUSIONS OF LAW

1. The Court concludes that the Defendant's blood was illegally obtained without a warrant and in the absence of a recognized exception to the warrant requirement, and that the statutory blood draw was invalid and unconstitutional without exigent circumstances to support the absence of a warrant.

## II. ANALYSIS

In one issue, the State contends that the trial court erred in granting appellee's motion to suppress because the police officer's compliance with the "repeat offender" provision of the "mandatory blood draw law," Section 724.012(b)(3)(B) of the Texas Transportation Code, precluded the involuntary, warrantless blood draw in this case from violating the Fourth Amendment to the United States Constitution. *See* U.S. CONST. amend. IV; TEX. TRANS. CODE ANN. § 724.012(b)(3)(B) (West 2011).

### A. Applicable Law

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "The Fourth Amendment protects people, not places." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quotations omitted).

"This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Id.* at 8–9. "[W]herever an individual may harbor a reasonable expectation of privacy, he is entitled to be free from unreasonable governmental intrusion." *Id.* at 9. "No right is held more sacred, or is more carefully guarded, by the common law, than

4

the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Id.* (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). The United States Supreme Court has recognized "[t]he security of one's privacy against arbitrary intrusion by the police as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Schmerber v. California*, 384 U.S. 757, 766 (1966) (quoting *Wolf v. Colorado*, 338 U.S. 25, 27 (1948)). "Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted." *Terry*, 392 U.S. at 9. "For what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Id.*

"In this case, as will often be true when charges of driving under the influence of alcohol are pressed, these [Fourth Amendment issues] . . . arise in the context of an arrest made by an officer without a warrant." *Schmerber*, 384 U.S. at 768. Here, there is no dispute that there was "probable cause for the officer to arrest . . . [appellee] and charge him with DWI." *Id.* The trial court specifically found "credible Officer Williams' testimony that the Defendant appeared to be intoxicated based on his red watery eyes, slurred speech, and swaying back and forth." The trial court also found "that the Defendant conceded at the suppression hearing that the arresting officer did nothing wrong in connection with the arrest."

"[E]arly cases suggest that there is an unrestricted 'right on the part of the government always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime.'" *Id.* at 769 (quoting *Weeks v. United States*, 232 U.S. 383, 392 [1913]) (citing

5

*People v. Chiagles*, 142 N.E. 583, 584 (1923) (Cardozo, J.)). "The mere fact of a lawful arrest does not end our inquiry." *Id.* "The suggestion of these cases apparently rests on two factors. *Id.* "[F]irst, there may be more immediate danger of concealed weapons or of destruction of evidence under the direct control of the accused." *Id.* (citing *United States v. Rabinowitz*, 339 U.S. 56, 72–73 (1950) (Frankfurter, J., dissenting)). "Second, once a search of the arrested person for weapons is permitted, it would be both impractical and unnecessary to enforcement of the Fourth Amendment's purpose to attempt to confine the search to those objects alone." *Id.* (citing *Chiagles*, 142 N.E. at 584). "Whatever the validity of these considerations in general, they have little applicability with respect to searches involving intrusions beyond the body's surface." *Id.*

"[C]ompulsory administration of a blood test . . . plainly involves the broad conceived reach of a search and seizure under the Fourth Amendment." *Id.* at 767. "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained." *Id.* at 769–70. "In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *Id.* at 770.

"It could not reasonably be argued, and indeed . . . [the State] does not argue, that the administration of the blood test in this case was free of the constraints of the Fourth Amendment." *Id.* at 767. "Such testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of

6

that Amendment." *Id.* "Because we are dealing with intrusions into the human body rather than with state interferences with property relationships or private papers—'houses, papers, and effects'—[the United States Supreme Court has] . . . writ[t]e[n] on a clean slate." *Id.* at 767–68. "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 767.

Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of appellee's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test. *Id.* "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* "The requirement that a warrant be obtained is a requirement that inferences to support the search be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* (quotations omitted). "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.*

"[S]earches conducted pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002). The Texas Court of Criminal Appeals has "made clear that drawing the suspect's blood pursuant to a search warrant [does] . . . not . . . offend[] the Constitution." *Id.* at 616. "A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly

7

limited in its objectives and scope." *Skinner v. Railway. Labor Executives' Ass'n*, 489 U.S. 602, 622 (1989). "A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case." *Id.*

In this case, there was no warrant; however, "the warrant requirement is subject to exceptions." *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013).[2] The United States Supreme Court has recognized only certain limited exceptions that trump the freedom and liberty of an individual to "[t]he integrity of an individual's person"—"a cherished value of our society." *Schmerber*, 384 U.S. at 772. "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *McNeely*, 133 S.Ct. at 1558 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). Yet, "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451 (1990). "Certainly we do not." *McNeely*, 133 S.Ct. at 1565. "While some progress has been made, drunk driving continues to exact a terrible toll on our society." *Id.* "But the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." *Id.*

"Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at 1563. In

---

[2] The United States Supreme Court has "never retreated . . . from . . . [its] recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests." *Missouri v. McNeely*, 133 S.Ct. 1552, 1565 (2013). We reject the State's contention that a mandatory blood draw is not "invasion of bodily integrity [that] implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* at 1558 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).

8

*Schmerber*, the United States Supreme Court held that a police officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber*, 384 U.S. at 770. The officer might believe that the "there are special circumstances . . . [and] no time to seek out a magistrate and secure a warrant." *Id.* at 771. If so, then under the precedent of the United States Supreme Court, the Court would be "satisfied that the test chosen to measure . . . appellee's blood-alcohol level was a reasonable one." *Id.* Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. *Id.* However, it bears repeating "[t]hat . . . [the United States Supreme Court has held] that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Id.*

## B.  Burden of Proof

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (footnote omitted).[3] "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Id.*; *see also State v. Kelly*, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006) (stating in the context of a case alleging assault in a blood draw

---

[3] "[A] defendant who moves for suppression under Article 38.23 due to the violation of a statute has the burden of producing evidence of a statutory violation." *State v. Robinson*, 334 S.W.3d 776, 777 (Tex. Crim. App. 2011). "Only when this burden is met does the State bear a burden to prove compliance." *Id.* "This procedure is substantially similar to that required when there is a motion to suppress under the Fourth Amendment, but it is a separate inquiry based on separate grounds." *Id.*

that "[i]t is important to note that appellee had the initial burden to produce evidence to support a finding that she did not consent to . . . [the] blood draw").

As noted above, the State stipulated that there was "no consent" and no warrant for the blood draw in this case. Therefore, the burden of proof shifted to the State to establish that the involuntary blood draw was reasonable under a recognized exception to the Fourth Amendment's warrant requirement. *See Kelly*, 204 S.W.3d at 819 n.22 ("[Once] appellee carried this initial burden, . . . the prosecution . . . assumed the burden of proof with the risk of nonpersuasion."); *Ford*, 158 S.W.3d at 492.

## C. Standard of Review

"We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion." *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). "In this review we give almost total deference to the trial court's determination of historical facts and review the court's application of search and seizure law de novo." *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)).

"In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). "Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id.* "This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Id.* "When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818.

10

"Whether we infer the fact findings or consider express findings, we uphold the trial court's ruling under any applicable theory of law supported by the facts of the case." *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). "Similarly, regardless of whether the trial court has made express conclusions of law, we uphold the trial court's ruling under any theory supported by the facts because an appellate court reviews conclusions of law de novo." *Id.* "Even if the trial court had limited its conclusion of law to a particular legal theory, an appellate court would not be required to defer to that theory under its de novo review." *Id.* This "rule holds true even if the trial court gave the wrong reason for its ruling." *Armendariz v. State*, 123 S.W.3d 401, 403 (Tex. Crim. App. 2003).

## D. Discussion

In this appeal, the State argues that it met its burden and that the trial court erred in granting appellee's motion to suppress because, at the hearing on the motion to suppress, it established that the blood draw was performed pursuant to the repeat offender provision of the mandatory blood draw law, Section 724.012(b) of the Texas Transportation Code, which provides in relevant part as follows:

> (b) ***A peace officer shall require the taking of a specimen of the person's breath or blood*** under any of the following circumstances ***if the officer arrests the person*** for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft ***and the person refuses the officer's request to submit to the taking of a specimen voluntarily***:
>
>> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person . . .
>>
>>> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements

> substantially similar to the elements of an offense under those sections.

TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (emphasis added).

To hold that the Fourth Amendment is applicable to the drug and alcohol testing prescribed by the repeat offender provision of the mandatory blood draw law "is only to begin the inquiry into the standards governing such intrusions." *Skinner*, 489 U.S. at 618–19. "For the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Id.* at 619. "What is reasonable, of course, 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'" *Id.* (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)).

"In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment." *Id.* "Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Id.* The United States Supreme Court has "recognized exceptions to this rule, however, "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Id.* (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)). "When faced with such special needs, . . . [the Court has] not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context." *Id.* The

12

government's interest in regulating the operation of motor vehicles on public roadways to ensure safety, like its interest in the supervision of railroad employees, probationers, regulated industries, and its operation of a government office, school, or prison, "likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 620.

Another "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Thus, the Texas Court of Criminal Appeals has recognized that "[t]he implied consent law . . . is another method of conducting a constitutionally valid search." *Beeman*, 86 S.W.3d at 615. "The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant." *Id.* at 616. "It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant." *Id.* In relevant part, the implied consent statute provides as follows:

> ***If a person is arrested for an offense arising out of*** acts alleged to have been committed while the person was ***operating a motor vehicle in a public place, or a watercraft, while intoxicated***, or an offense under Section 106.041, Alcoholic Beverage Code, ***the person is deemed to have consented***, subject to this chapter, to submit ***to the taking of one or more specimens of the person's breath or blood*** for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011) (emphasis added). As the Texas Court of Criminal Appeals has explained, "[t]he implied consent law does just that—it implies a suspect's consent to a search in certain instances." *Beeman*, 86 S.W.3d at 615.

13

The statute implies consent in every instance in which a person is arrested for DWI. *See* TEX. TRANSP. CODE ANN. § 724.011(a). However, it "does not give officers the ability to forcibly obtain blood samples from anyone arrested for DWI." *Beeman*, 86 S.W.3d at 616. The statute specially states that "[e]xcept as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." TEX. TRANSP. CODE ANN. § 724.013 (West 2011). The relevant language in Section 724.012(b) authorizes and, in fact, requires an officer to take a breath or blood sample if a person is arrested for DWI, has two or more prior convictions, and refuses to voluntarily consent to the officer's request to take a breath or blood sample. *Id.* § 724.012(b)(3)(B).[4]

As noted above, the trial court ruled that appellee had waived all his complaints except as to the constitutionality of the repeat offender provision of the mandatory blood draw law, as applied to him.[5] *See* TEX. R. APP. P. 47.1; *Curry v. State*, 910 S.W.2d 490

---

[4] *See State v. Johnston*, 336 S.W.3d 649, 771 (Tex. Crim. App. 2011) ("[T]he Supreme Court has determined that a blood test is a reasonable means in which to analyze an individual's blood alcohol level.") (citing *Schmerber*, 384 U.S. at 770) and *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (stating that there is nothing brutal or offensive when an emergency room physician takes a blood sample from an unconscious suspect to obtain the suspect's blood alcohol level)).

[5] Appellee made no separate facial challenge to the statute. *See State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) ("Rather than focus on the presence of magic language, a court should examine the record to determine whether the trial court understood the basis of a defendant's request."); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("[T]here are no technical considerations or form of words to be used. Straightforward communication in plain English will always suffice."). "[A] plaintiff can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008) (quotations omitted). "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical or 'imaginary' cases." *Id.* "Exercising judicial restraint in a facial challenge "frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *Id.* "Facial challenges are disfavored for several reasons." *Id.* "As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* "Claims of facial invalidity often rest on speculation." *Id.* "Facial challenges also run contrary to *the* fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* at 450. "Finally, facial challenges threaten to short

14

(Tex. Crim. App. 1995) (holding points of error that statute was "unconstitutional as applied to appellant . . . were [not] properly preserved for appellate review"). "[A]n 'as applied' challenge to the constitutionality of a statute requires the challenger to demonstrate that the statute has operated unconstitutionally when applied to his particular circumstances." *Lykos*, 330 S.W.3d at 915. "Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the challenger to first show that, in its operation, the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." *Id.* "Therefore, any court considering an 'as applied' challenge to a statute must look at the challenger's conduct alone to determine whether the statute operated unconstitutionally." *Id.* In this case, we agree with the State in part and with appellee in part.

First, we recognize that "the constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised." *Id.* In this case, the constitutionality of the repeat offender provision of the mandatory blood draw law as applied to appellee is properly before this Court and necessary to final disposition of the appeal. *See* TEX. R. APP. P. 47.1.

Second, the record supports the trial court's findings and conclusions to the effect that there was probable cause for appellee's arrest for DWI. *See* TEX. PENAL CODE ANN. § 49.01(2) ("'Intoxicated' means: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a

---

circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* "We must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* (quotations omitted).

15

drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more."); *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) ("It is established in the case law that an officer must have probable cause to arrest a defendant without a warrant.").[6] In any event, appellee waived any challenge to the existence of probable cause when he "conceded at the suppression hearing that the arresting officer did nothing wrong in connection with the arrest and blood draw, except to the extent of Defendant's constitutional challenge to the mandatory blood draw statute." Therefore, the arrest was valid. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Third, based on the police officer's description of appellee's physical condition at the time of his arrest, which the trial court found credible and ostensibly accepted as true, a neutral and detached magistrate could have found probable cause to issue a warrant for a blood draw. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). Under the circumstances, obtaining a warrant was a formality that should have been, but was not, observed even though it appears a foregone conclusion that a warrant could have been obtained from any rational magistrate. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("Under that standard of review, we uphold the probable cause determination so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.") (quotations omitted); *Roberts v.*

---

[6] *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) ("Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."); *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) ("Other evidence that would logically raise an inference that the defendant was intoxicated at the time of driving as well as at the time of the BAC test includes, inter alia, erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking—in short, any and all of the usual indicia of intoxication.").

*State*, 963 S.W.2d 894, 903 (Tex. App.—Texarkana 1998, no pet.) ("[T]he two objectives of the law concerning search warrants are to ensure that there is adequate probable cause to search and to prevent a mistake in the execution of the warrant against an innocent third party.").

Fourth, under the circumstances of this case, Texas law provides that a police officer who arrests someone for DWI—knowing that the individual has two or more prior convictions and is refusing to voluntarily consent to the officer's request to provide a blood or breath sample—*"shall require the taking of a blood or breath sample."* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (emphasis added). Our analysis of the reasonableness of the police officer's conduct cannot ignore that Texas law required the taking of a blood or breath specimen. *See id.* This was not an arbitrary act by a police officer. Rather, the officer faithfully followed the no-refusal statutory framework that has been enacted by the Legislature. *See id.* As the trial court found, "the Defendant conceded at the suppression hearing that the arresting officer did nothing wrong in connection with the arrest and blood draw, except to the extent of Defendant's constitutional challenge to the mandatory blood draw statute."

Fifth, the State concedes there was no consent.[7] Instead, the State invokes its

---

[7] The Texas Penal Code provides in relevant part as follows:

> (11) "Consent" means assent in fact, whether express or apparent . . . .
>
> (19) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:
>
>> (A)    induced by force, threat, or fraud;
>>
>> (B)    given by a person the actor knows is not legally authorized to act for the owner;
>>
>> (C)    given by a person who by reason of youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable decisions; or
>>
>> (D)    given solely to detect the commission of an offense.

17

compliance with the repeat offender provision of the mandatory blood draw law as an exception to the Fourth Amendment's warrant requirement. *See id.* However, there is a distinction between a consensual blood draw and an involuntary, mandatory blood draw. The implied consent law is premised on consent. *See id.* § 724.011(a); *Beeman*, 86 S.W.3d at 615 ("The implied consent law does just that—it implies a suspect's consent to a search in certain instances."). In contrast, the mandatory blood draw law is premised on refusal to consent. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (requiring a blood draw if "***the person refuses the officer's request to submit to the taking of a specimen voluntarily***") (emphasis added).

Sixth, after stipulating that there was "no consent," the State argues that Chapter 724 creates a legislative consent or essentially a statutory waiver of the Fourth Amendment—one that cannot be withdrawn or withheld by certain individual suspects, such as appellee, who have two or more prior convictions for DWI. *See id.*[8] According to the State, the Legislature has the ultimate control over an individual's ability to consent to a warrantless blood draw, and it has made a decision categorically and conclusively on behalf of all those individuals who have two or more prior convictions for DWI such that those individuals have no right to refuse to consent. *But see Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) ("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the

---

TEX. PENAL CODE ANN. § 1.07(a)(11), (19) (West Supp. 2011).

[8] Typically, "the person who consents . . . may specifically limit or revoke his consent." *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (consent to search "must be shown to be positive and unequivocal, and there must not be any duress or coercion"). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

consent was, in fact, freely and voluntarily given."); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex. Crim. App. 1976) ("[T]he protections afforded by the Fourth Amendment . . . may be waived by an individual consenting to a search."). This might be compared to the implied consent law in Minnesota, which "makes it a crime to refuse testing." *Minnesota v. Brooks*, 838 N.W.2d 563, 570 (Min. 2013). "But if someone suspected of driving while impaired does not agree to take a test, the police [in Minnesota] may not administer one." *Id.* at 569. Thus, the law in Minnesota "makes clear that drivers have a choice of whether to submit to testing." *Id.* at 570. However, in this case, the police officer "effectively announc[ed] that appellee had no right to resist the blood draw." *Kelly*, 204 S.W.3d at 821.

Seventh, we recognize that the drunk driving problem is a national epidemic, and the legal tools in the police's crime-fighting arsenal must keep pace with the danger posed to the public.[9] The repeat offender provision of the mandatory blood draw allows police to obtain scientific evidence that can be of tremendous value to law enforcement and to the State in establishing the guilt of the accused. TEX. TRANSP. CODE ANN. §§ 724.063–.64 (West 1999). "But the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." *McNeely*, 133 S.Ct. at 1565.

In sum, we reiterate that, in this case, there were the usual signs of intoxication, such as unsteady feet, smelling strongly of intoxicants, and slurred speech, from which

---

[9] *South Dakota v. Neville*, 459 U.S. 553, 558 (1983) ("The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy.").

a reasonable officer could have inferred intoxication and the offense of DWI. *Dyar v. State*, 59 S.W.3d 713, 716 n.1 (Tex. App.—Austin 2001), *aff'd*, 125 S.W.3d 460 (Tex. Crim. App. 2003). There was probable cause, but the trial court also found "credible Officer Williams' testimony that he could have gotten a warrant for the blood draw and there were no exigent circumstances that would have prevented him from getting a warrant." *See McNeely*, 133 S.Ct. at 1561 ("In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.").

The officer's sole basis for not getting a warrant was that the repeat offender provision of the mandatory blood draw law required him to take a blood sample without appellee's consent and without the necessity of obtaining a search warrant. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B). Although we agree that the statute required the officer to obtain a breath or blood sample, it did not require the officer to do so without first obtaining a warrant. *See id.* In fact, the statute does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws. Furthermore, to the extent that the State argues that there was valid "consent" under the Fourth Amendment—whether by the mandatory blood draw law or the implied consent law—it is barred from doing so in this appeal by its stipulation before the trial court that in this case "[t]here was no consent, no warrant."[10]

---

[10] *See Alford v. State*, 400 S.W.3d 924, 928–29 (Tex. Crim. App. 2013) ("[T]he State, as appellant, . . . [is] prohibited from raising an argument for the first time on appeal if that argument would serve as a basis to reverse the trial court's ruling on a motion to suppress."); *State v. Rhinehart*, 333 S.W.3d 154, 162 (Tex. Crim. App. 2011) (stating that the "ordinary rules of procedural default" apply to "losing party" in trial court); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) ("It is well-settled that . . . it violates ordinary notions of procedural default for a Court of Appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party.") (quotations

20

To date, neither the United States Supreme Court nor the Texas Court of Criminal Appeals has recognized the repeat offender provision of the mandatory blood draw law, quoted above, as a new exception to the Fourth Amendment's warrant requirement separate and apart from the consent exception and the exception for exigent circumstances.[11] In fact, in *Beeman*, the Texas Court of Criminal Appeals recognized that these laws do not give police officers anything "more than [what] the Constitution already gives them." *Beeman*, 86 S.W.3d at 616. Accordingly, we conclude that the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement.[12]

---

omitted); *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (en banc) ("[I]n cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense.").

[11] To the extent the San Antonio Court of Appeals suggested otherwise in *Aviles*, we believe it was incorrect. In 2012, the San Antonio Court of Appeals held that a police officer's compliance with the repeat offender provision of the mandatory blood draw statute precluded an involuntary, warrantless blood draw from being a violation of the Fourth Amendment. *See Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App.—San Antonio 2012, pet. ref'd) ("This situation, as outlined in section 724.012, is one of the 'circumstances' the Texas Court of Criminal Appeals has held where blood may be drawn without a search warrant.") (citing *Beeman*, 86 S.W.3d at 616). In *Aviles*, the court of appeals recognized that the blood draw was done without the defendant's consent, but it cited the Texas Court of Criminal Appeals' decision in *Beeman* for the proposition that "[t]his situation, as outlined in section 724.012, is one of the 'circumstances' the Texas Court of Criminal Appeals has held where blood may be drawn without a search warrant." *Id.* (citing *Beeman*, 86 S.W.3d at 616). Yet, in *Beeman*, the police had a warrant, and the Court dismissed the consent issue as "moot." *Beeman*, 86 S.W.3d at 616 ("[O]nce a valid search warrant is obtained . . . consent, implied or explicit, becomes moot."). Thus, in *Aviles*, the court of appeals clearly stretched *Beeman* beyond its holding by suggesting that it involved a warrantless blood draw when it plainly did not. The case was decided based on the existence of a valid warrant, not on compliance with section 724.012. *Id.* ("The warrant authorized the seizure of Beeman's blood, and he does not contest the validity of the warrant.").

[12] Ostensibly, it is the State's position that the Texas Legislature intended the repeat offender provision of the mandatory blood draw law to be a new exception to the Fourth Amendment's warrant requirement applicable to non-consenting individuals who have two or more prior convictions for DWI. *See Neville*, 459 U.S. at 558 ("The carnage caused by drunk drivers is well documented and needs no detailed recitation here."). Yet, the statute does not purport to dispense with the Fourth Amendment's warrant requirement. *See* U.S. CONST. amend. IV. Furthermore, in this case, the undisputed existence of probable cause and the apparent ease with which a warrant could have been obtained inform us that, as a practical matter, requiring a warrant under these circumstances would not have hindered effective crime-fighting; rather, it would have ensured that the ends of justice were best served in a court of law

21

Here, by the State's stipulation, "there was no consent." There was nothing stopping the officer from obtaining a warrant. There were no exigent circumstances. We believe these are key distinctions between this case and other cases involving warrantless blood draws.[13]

Given the absence of a warrant, the absence of exigent circumstances, and the absence of consent, we agree with the trial court's conclusion that the State failed to demonstrate that the involuntary blood draw was reasonable under the Fourth

during the defendant's trial, when the State would have been able to offer to the trier of fact admissible scientific evidence and expert testimony regarding the defendant's blood alcohol content to establish his guilt beyond a reasonable doubt. *See* TEX. TRANSP. CODE ANN. §§ 724.063–.64. Again, the United States Supreme Court has held that a warrant is "ordinarily required" for an involuntary blood draw. *See Schmerber v. California*, 384 U.S. 757, 767 (1966) ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned."). As an intermediate court of appeals, we must follow this precedent, as well as the precedent of the Texas Court of Criminal Appeals, which has never, to our knowledge, indicated that the repeat offender provision of the mandatory blood draw law requires a warrantless blood draw from a non-consenting DWI arrestee who has two or more prior convictions for DWI. *See State v. Johnston*, 336 S.W.3d 649, 651 (Tex. Crim. App. 2011) (noting that arresting officer obtained a search warrant to draw blood sample); *Beeman*, 86 S.W.3d at 614 (same). Thus, we follow the bright-line rule that in the absence of consent the Fourth Amendment requires a warrant or circumstances where it is reasonable to proceed without a warrant because there is no time to obtain a warrant (i.e., exigent circumstances). *See McNeely*, 133 S.Ct. at 1561 ("In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."). In doing so, we reiterate that the literal text of Chapter 724 does not purport to dispense with the Fourth Amendment's warrant requirement. *See* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended . . . ."); *Bays v. State*, 396 S.W.3d 580, 584–85 (Tex. Crim. App. 2013) ("[W]e necessarily focus our attention on the literal text of the statute . . . . [I]t is not for the courts to add to or subtract from such a statute."); *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999) ("[I]t is quite a serious matter for this Court to read into the statute something which was omitted by the lawmaking body."); *State v. Mosely*, 348 S.W.3d 435, 442 (Tex. App.—Austin 2011, pet. ref'd) ("[A] statute cannot authorize what the Constitution forbids.").

[13] *See State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011) (stating that officer's testimony "showed probable cause for the arrest and also showed that appellee consented to have his blood drawn . . . and [t]he trial court entered a finding that there were no grounds for suppression under the Fourth Amendment"); *State v. Kelly*, 204 S.W.3d 808, 821 (Tex. Crim. App. 2006) ("[W]e decide that an express or implied finding of 'mere acquiescence' to . . . blood draw also constitutes a finding of consent to the blood draw."); *State v. Flores*, 392 S.W.3d 229, 236 n.1 (Tex. App.—San Antonio 2012, pet. ref'd) ("We note that Flores maintains he has not brought any constitutional claims. Flores states that he 'never objected to the admission of the blood evidence on Fourth Amendment grounds.' According to Flores, he sought suppression of the evidence based only on a violation of state law pursuant to Texas's exclusionary rule, article 38.23."); *Mosely*, 348 S.W.3d at 439 ("Thus, a warrantless seizure of a blood sample can be constitutionally permissible if officers have probable cause to arrest a suspect, exigent circumstances exist, and a reasonable method of extraction is available.").

Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable to this case, as was its burden. *See* U.S. CONST. amend. IV; *Ford*, 158 S.W.3d at 492. Accordingly, we overrule the State's sole issue.[14]

### III. CONCLUSION

We affirm the order of the trial court.

NORA L. LONGORIA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of January, 2014.

---

[14] We express no opinion on the constitutionality of the repeat offender provision of the mandatory blood draw law except as the provision was applied to appellee in the specific circumstances of this particular case, where the police officer admitted that he could have obtained a warrant and chose not to because of the statute, which does not purport to dispense with the Fourth Amendment's warrant requirement. *See* TEX. R. APP. P. 47.1.

23