

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00261-CR

MARCUS BRUCE HOLIDY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR13-044

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

This appeal involves the sole question of the constitutionality of taking and testing blood under the implied consent provisions of Section 724.012(b)(3)(B) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). Because we are constrained by principles recently enunciated by the United States Supreme Court, we reverse the conviction herein based on the unconstitutionality of the statute and remand this case for a new trial. *See Aviles v. Texas*, 134 S.Ct. 902 (2014); *Missouri v. McNeely*, 133 S.Ct. 1552 (2013).

On an August evening in 2012, Officer Eric Rogers of the Henderson Police Department interviewed Marcus Bruce Holidy concerning an investigation not centering on Holidy. Rogers noticed, during the interview, that Holidy had impaired balance, bloodshot eyes, and slurred speech. Some twenty minutes later, Rogers observed Holidy driving a Dodge Dakota that accelerated "very quickly" violating a city traffic ordinance against "digging out." After stopping Holidy's vehicle, Rogers smelled a strong odor of alcohol on Holidy and saw that he still had slurred speech and bloodshot eyes. When given the standard field sobriety tests, Holidy exhibited further evidence of his intoxication. Holidy was arrested and, due to his two prior DWI convictions, charged with DWI, third or more, a third degree felony.[1] From Holidy's interaction with officers, Holidy believed he had no choice but to submit[2] to their directives of

---

[1]*See* TEX. PENAL CODE ANN. §§ 49.04 (DWI), 49.09(b)(2) (enhanced offenses and penalties) (West Supp. 2013).

[2]Before taking Holidy to the Rusk County jail, Rogers drove Holidy to East Texas Medical Center where a phlebotomist took a sample of Holidy's blood. At the suppression hearing, the State noted that Holidy "consented" to the blood draw. The only relevant evidence adduced was that Holidy was told by officers that he had no choice, so he "didn't argue" with them about the blood draw. Rogers did not testify at the suppression hearing, and the

having his blood drawn and tested for alcohol, so a blood specimen was taken and tested[3] under the authority of Section 724.012(b)(3)(B) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011).

Holidy filed a motion to suppress any evidence pertaining to the blood specimen, claiming, among other things, that the specimen was seized without a warrant or consent. When the trial court denied Holidy's motion to suppress, he pled guilty, and as part of a plea agreement, received a sentence of six years' confinement. Holidy urges, in a single appellate issue, that the warrantless blood seizure was constitutionally improper.[4]

Holidy relies on *McNeely*, for the proposition that a warrant for the extraction of his blood was required in this case. In *McNeely*, the United States Supreme Court addressed the issue of whether the Fourth Amendment requires police to get a warrant before taking a blood sample from a nonconsenting driver suspected of being under the influence of alcohol. *McNeely*, 133 S.Ct. at 1556. The Court concluded that the natural dissipation of alcohol in the bloodstream

---

incident report was offered and admitted into the record only after the trial court denied Holidy's motion to suppress. The State does not argue consent as an independent basis on which the blood draw might be sustained, but argues solely that the statute is not unconstitutional.

[3]The blood test revealed a blood-alcohol level of 0.166.

[4]We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). A trial court's determination of historical facts is given almost total deference, while the trial court's application of the law is reviewed de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). When the trial court does not issue findings of fact and none are requested, as in this case, we imply findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *Turrubiate*, 399 S.W.3d at 150. We view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party "the 'strongest legitimate view of the evidence'" and all reasonable inferences that may be drawn from the evidence. *State v. Duron*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013) (quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011)). We will uphold the trial court's ruling if it is reasonably "supported by the record and is correct on any theory of law applicable to the case." *Turrubiate*, 399 S.W.3d at 150.

does not present a per se exigency that justifies an exception to the warrant requirement for nonconsensual blood testing in all DWI cases. *Id.* Instead, the Court recognized that, sometimes, exigent circumstances, based in part on the rapid dissipation of alcohol in the body, may allow law enforcement to obtain a blood sample without a warrant. Courts must determine on a case-by-case basis whether exigent circumstances exist, considering the totality of the circumstances. *Id.*

Holidy contends that, effectively, the statute unconstitutionally requires blood testing in all felony cases.[5] He claims that, in this case, the State failed to demonstrate the existence of exigent circumstances which would forgive the lack of a warrant. He therefore claims the blood specimen was taken in violation of his Fourth amendment rights and should have been suppressed.

The withdrawal of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). The Fourth Amendment to the United States Constitution protects the right to be free from unreasonable searches. U.S. CONST. amend. IV. A warrantless search or seizure is per se unreasonable unless it falls under a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

Here, the State does not claim an exigency exception to the warrant requirement. Instead, the State relies on Section 724.012(b)(3)(B) of the Texas Transportation Code as its authority for

---

[5]As recognized by our sister court, "The statute does not purport to authorize a warrantless blood draw based solely on the natural metabolization of alcohol in the bloodstream; instead, it sets forth multiple, specific circumstances in which a blood draw is required." *Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818, at *5 (Tex. App.—Houston [14th Dist.] Oct. 15, 2013, no pet. h.). *Douds* has not been released for publication in the permanent law reports. It is therefore subject to revision or withdrawal until released.

4

obtaining the blood specimen. As applicable to this case, that section requires a peace officer to take a specimen of blood or breath of a driver arrested for DWI who refuses to consent to the specimen if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person" at least twice before has been convicted or put on community supervision for DWI. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B).

Pursuant to Section 724.011 of the Texas Transportation Code, a person who has been arrested for DWI in a public place is considered to have consented to the taking of a breath or blood specimen for analysis to determine the alcohol concentration in the person's body. *See* TEX. TRANSP. CODE ANN. § 724.011 (West 2011). Such a person retains the right, subject to automatic suspension of his or her license, to refuse to provide a specimen. TEX. TRANSP. CODE ANN. § 724.035 (West 2011). If, however, the person refuses to voluntarily provide a specimen and the arresting officer, at the time of the arrest, possesses or receives reliable information from a credible source that the person on two or more occasions has previously been convicted of DWI, the officer "shall require the taking of a specimen of the person's breath or blood." TEX. TRANSP. CODE. ANN. § 724.012(b)(3)(B). Here, there is no dispute that Holidy had two prior DWI convictions. The statute mandates a blood draw for this particular offense and deems that Holidy impliedly consented to the blood draw.

"The implied consent law does just that—it implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since consent is another method of conducting a constitutionally valid search." *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002).

5

> The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.

*Id.* at 616.

While this reasoning has been used by intermediate appellate courts to uphold the validity of a warrantless blood draw, the United States Supreme Court's *McNeely* opinion casts grave doubt on such reasoning. In a recent case issued before *McNeely*, our sister court of appeals in San Antonio held, under existing precedent, that a warrantless blood draw conducted according to the Texas Transportation Code did not violate the defendant's Fourth Amendment rights. *See Aviles v. State*, 385 S.W.3d 110, 112 (Tex. App.—San Antonio 2012, pet. ref'd), *vacated*, 134 S.Ct. 902 (2014). The United States Supreme Court vacated the *Aviles* judgment and remanded the case to the court of appeals for further consideration in light of *McNeely*.[6] *Aviles*, 134 S.Ct. at 902.

Aviles was arrested for DWI and at the time had two prior DWI convictions. After he was given the appropriate statutory warnings, Aviles refused to provide a breath or blood sample. As in this case, the arresting officer, in reliance on Section 724.012(b)(3)(B) of the Texas Transportation Code, obtained a mandatory, nonconsensual blood draw. *Aviles*, 385 S.W.3d at 112–13. On appeal, Aviles challenged the denial of his motion to suppress, arguing that the trial court erred by admitting his blood specimen into evidence because the specimen was obtained without consent and without a warrant. *Id.* at 112. In rejecting this contention, the court relied

---

[6]As of the date of this opinion, the San Antonio Court of Appeals has not issued a new opinion in *Aviles*.

6

on the implied-consent provision of the Texas Transportation Code. It reasoned that the mandate of Section 724.012(b)(3)(B) was one of the "circumstances" referenced in *Beeman* in which blood may be drawn without a warrant. *Id*. at 116. The fact that the officer could have gotten a warrant for the blood draw was "immaterial given the mandate of [S]ection 724.012(b)(3)(B)." *Id*.[7]

In a post-*McNeely* decision, the Corpus Christi Court of Appeals recently held that "the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement." *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. filed).

In *Villarreal*, the court was confronted with a factual scenario similar to that presented here. Villarreal, who was arrested for DWI when he had three prior DWI convictions, did not consent to a blood draw, and a blood warrant was not obtained. The State conceded that there were no exigent circumstances. *Id*. at *1. The test showed that Villarreal was over the legal limit for alcohol in his system, and he was charged with third degree felony DWI. *Id*. The State appealed the grant of Villarreal's suppression motion, claiming that, because it established the blood draw was performed pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code, there was no Fourth Amendment violation. *Id*. at **2, 9. The court observed that there is a distinction between a consensual blood draw and a nonconsensual, mandatory blood draw,

---

[7]*Aviles* pre-dated *McNeely*. In a post-*McNeely* decision, our sister court addressed a similar issue in *Smith v. State*, No. 13-11-00694-CR, 2013 WL 5970400, at *1 (Tex. App.—Corpus Christi Oct. 31, 2013, pet. dism'd.). Like *Aviles*, *Smith* recognized that implied consent to a search is, as stated in *Beeman*, another method of conducting a constitutionally valid search. *Id*. at *3. The Corpus Christi Court withdrew this opinion on November 26, 2013.

because "the mandatory blood draw law is premised on refusal to consent." *Id.* at *9. Further, because

> neither the United States Supreme Court nor the Texas Court of Criminal Appeals has recognized the repeat offender provision of the mandatory blood draw law . . . as a new exception to the Fourth Amendment's warrant requirement separate and apart from the consent exception and the exception for exigent circumstances[,] . . . the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the fourth Amendment's warrant requirement.

*Id.* at *11. Very recently, a different sister court aptly stated the resulting situation:

> By vacating and remanding *Aviles*, it would seem that the United States Supreme Court has rejected any position that would treat Section 724.012(b)(3)(B) as an exception to the Fourth Amendment, separate and apart from the traditional, well-established exceptions. Similarly, it would seem that the position advanced in *Aviles* that the Texas Transportation Code's implied-consent provision applies to justify the warrantless mandatory blood draw of Section 724.012(b)(3)(B) is also constitutionally infirm.

*Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *8 (Tex. App.—Amarillo Apr. 7, 2014, no pet. h.) (no exigent circumstances supported warrantless seizure of appellant's blood specimen).

In light of the United States Supreme Court's remand of *Aviles* and in light of the reasoning in *Villarreal*[8] and *Sutherland*, we conclude that, in the absence of either a warrant or exigent circumstances, taking Holidy's blood pursuant to Section 724.012(b)(3)(B) of the Texas

---

[8]Section 724.012(b)(3)(B) does not purport to dispense with the warrant requirement. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B); *Villarreal*, 2014 WL 1257150, at *11 n.12; *see* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended.").

Transportation Code violated his Fourth Amendment rights.[9]  *Villarreal*, 2014 WL 1257150, at *11; *see Schmerber*, 384 U.S. at 767 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.").  It was error, therefore, to deny Holidy's motion to suppress.

We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.[10]


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 25, 2014
Date Decided:       April 30, 2014

Do Not Publish

---

[9]*Cf. Perez v. State*, No. 01-12-01001-CR, 2014 WL 943126, at *7 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet. h.) (taking blood sample without warrant in compliance with Section 724.012(b) of Transportation Code did not violate defendant's Fourth Amendment rights by requiring him to submit to nonconsensual warrantless blood test).

[10]The State contends that there is sufficient evidence to affirm the trial court's judgment even if the blood-related evidence is suppressed because Holidy pled guilty and stipulated to the evidence and because Rogers' incident report contained other evidence of intoxication.  However, Holidy pled guilty and signed the stipulation of evidence only after the trial court erroneously denied his motion to suppress, and the trial court's denial of his motion could have been the precipitating cause of Holidy's decision to plead guilty.  *See Kraft v. State*, 762 S.W.2d 612, 614 (Tex. Crim. App. 1988).  Because the evidence gleaned from the seized blood would in some measure inculpate Holidy, this Court may presume that the denial of the motion to suppress influenced Holidy's decision to plead guilty.  *Kennedy v. State*, 338 S.W.3d 84, 102–03 (Tex. App.—Austin 2011, no pet.).  Accordingly, Holidy is entitled to a new trial consistent with this opinion.  *Id.*