ACCEPTED
07-14-00161-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
1/20/2015 7:15:46 PM
Vivian Long, Clerk

**NO. 07-14-00161-CR**

**IN THE
COURT OF APPEALS
FOR THE
SEVENTH DISTRICT OF TEXAS
AMARILLO, TEXAS**

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

1/20/2015 7:15:46 PM

VIVIAN LONG
CLERK

# REX ANN BAKER,
**APPELLANT**

**VS**

# THE STATE OF TEXAS,
**APPELLEE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**BRIEF FOR THE APPELLANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# ORAL ARGUMENT REQUESTED

**Kelly Clark
Attorney-at-law
1601 Broadway
Lubbock, Texas 79401
(806) 765-9977**

**Attorney for the Appellant
REX ANN BAKER**

ARTIES
(Rule 38.1, TEX. R. App. Proc)

A complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel includes:

For the Appellant:

KELLY CLARK
1401 Crickets Ave.

Lubbock, TX 79401
(806) 765-9977
(806) 744-5411 (fax)
State Bar No. 00790467
(Appellate Counsel)

DAVID CROOK
Attorney at Law
P.O. Box 94590
Lubbock, Texas 79493
(806) 744-2082
(Trial Counsel)

For the State of Texas:

JEFFREY FORD
        Criminal District
Attorney
P.O. Box 10536
Lubbock, TX 79401
(806) 775-1100
(806) 775-1154 (fax)
(Appellate Counsel)

Stephan Crane
Criminal District Attorney
P.O. Box 10536
Lubbock, TX 79401
(806) 775-1100
(806) 775-1154 (fax)
(Trial Counsel)

Laura Beth Martin
Criminal District Attorney
P.O. Box 10536
Lubbock, TX 79401
(806) 775-1100
(806) 775-1154 (fax)
(Trial Counsel)

**TABLE OF CONTENTS**

Page

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vii

APPELLANT'S POINTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**POINT OF ERROR NUMBER ONE:  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SUPPRESS THE EVIDENCE OBTAINED BY LAW ENFORCEMENT CONDUCTING AN ILLEGAL BLOOD DRAW IN VIOLATION OF THE APPELLANT'S RIGHT PROHIBITING UNREASONABLE SEARCHES AND SEIZURES UNDER THE UNITED STATES CONSTITUTION.**

**POINT OF ERROR NUMBER TWO:  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SUPPRESS THE EVIDENCE OBTAINED BY LAW ENFORCEMENT CONDUCTING AN ILLEGAL BLOOD DRAW IN VIOLATION OF THE APPELLANT'S RIGHT PROHIBITING UNREASONABLE SEARCHES AND SEIZURES UNDER THE TEXAS CONSTITUTION.**

**POINT OF ERROR NUMBER THREE:  THE TRIAL COURT UNCONSTITUTIONALLY HARMED APPELLANT WHEN IT REFUSED TO SUPPRESS THE RESULTS OF APPELLANT'S BLOOD ALCOHOL CONTENT THAT WAS ONLY AVAILABLE AS A RESULT OF A BLOOD DRAW TAKEN FOR MEDICAL PURPOSES AND PRODUCED INTO EVIDENCE BY A SHAM GRAND JURY SUBPOENA ISSUED SUBSEQUENT TO INDICTMENT.**

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION AND PRAYER. . . . . . . . .. . . . . . . . . . . . . . . . . . . . .. . . .42

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . .. . . . . . . . . .. . . . . . . . . . . .43

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

**INDEX OF AUTHORITIES**

**CASES**                                                                       **Page**

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). . . . . . . . . . . . .15, 25, 26,31

*Douds v. State*, 14-12-00642 CR (Tex. App.—Houston(14th Dist June 5, 2014)(unpublished cited for persuasive purposes only)(rehearing en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 34

*Florida v. Wells,* 495 U.S.1, 4, 110S.Ct. 1632, 109 L.Ed 1 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). . . . . . . . ., . . . . . . . . 21

*Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .24

*Kelly v. State*, 204 S.W.3d at 808 (Tex.Crim.App 2006) . . . . . . . . . .. . . . . . . . . 21

*Kennemur v. State*, 280 S.W.3d 305 (Tex.App.Amarillo 2008, pet.ref'd), cert denied, 556 U.S. 1191, 129 S.Ct. 2005, 173L.Ed.2d 1101 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 451 (1990) . . . .. . . . . . . . . . . 16

*Miller El V. Dretke,* 545 U.S. 231, 252 (2005). . . . . . . . . . . . . . . . . . .. . . . . . . . .38

*Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013) . . . . . . . . . . . 9, 16, 17, 18, 29, 35

*Murray v. State*, 245 S.W.3d 37 (Tex.App—Austin 2007)(pet filed) . . . . . . . . . . 40

*People v. Chiagles*, 142 N.E. 583, 584 (1923) . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

*Salazar v. State*, 12-13-00192 (Tex.App-Tyler August 29, 2014 unpublished cited for persuasive purposes only) . . . . . . . . . . . . . . . . ..18, 19, 30, 34

*Schmerber v. California*, 384 U.S. 757, 766 (1966) . . . . . . . . . . . . . . . 10, 11, 16, 17

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*State v. Baker*, 12-12-00092-CR, 2013 WL 5657649 (Tex.

App. – Tyler Oct. 16, 2013, pet. granted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*State v. Huse*, 07-12-00383-CR (Tex.App.—Amarillo 2014)
(not published, cited for persuasive purposes only) . . . . . . . . . . . . . . . . . . . . . . . . 40

*Tapp v. State*, 108 S.W.2d 459 (Tex.App Houston—2003 pet. ref'd ) . . . . . . . . . 40

*State v. Villareal*, 13-13-253CR (Tex.App.–Corpus
Christi -Edinburg 2014)(affirmed by *State v. Villareal*,
PD 0306 Tex.Crim.App. Dec 2014) . . . . . . . . . . . . . . . . . .10, 11, 12, 13, 14, 15, 16
17, 22, 23, 24, 25, 27, 28, 30, 32

*Sutherland v. State*, 07-12-00289-CR (Tex.App.—Amarillo,
April 7, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 34, 35

*Terry v. Ohio*, 392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891). . . . . . . . . . . . . . . . . . . . 10

*United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985) . . . . . . . . . . . .24

*Weeks v. United States*, 232 U.S. 383, 392 [1913]) . . . . . . . . . . . . . . . . . .. . . . . . . . . . 11

*Weems v. State*, 434 S.W.3d 655 (Tex.App.--San Antonio 2014) . . . . 19, 34, 35, 36

STATUTES AND AUTHORITIES                                          PAGE

Federal

United States Constitution, Amendment IV . . . . . . . . . . . . . . . . . . . . . , 10, 33, 34

State

Texas Constitution, Article 1§ 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Tex. Transp. Code Ann. § 724. . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26, 33, 42

## NO. 07-14-00161-CR

### IN THE
### COURT OF APPEALS
### FOR THE
### SEVENTH DISTRICT OF TEXAS
### AMARILLO, TEXAS

### REX ANN BAKER,
### APPELLANT

### VS

### THE STATE OF TEXAS,
### APPELLEE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### BRIEF FOR THE APPELLANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TO THE HONORABLE COURT OF APPEALS:

COMES NOW **REX ANN BAKER**, Appellant, by and through her attorney of record, KELLY CLARK, and makes and files this, her BRIEF FOR APPELLANT, and would show this Honorable Court as follows:

### PRELIMINARY STATEMENT

This is an appeal from the 137th District Court for Lubbock County, Texas, the Honorable John McClendon, Judge presiding. Appellant was tried for the offense of DWI 3rd or More. A jury found Appellant guilty of the charge.

Appellant received seventy eight years of incarceration in the Texas Department of Criminal Justice from the jury. *Id.* Appellant did not testify during the trial.

## APPELLANT'S POINTS OF ERROR

**POINT OF ERROR NUMBER ONE: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SUPPRESS THE EVIDENCE OBTAINED BY LAW ENFORCEMENT CONDUCTING AN ILLEGAL BLOOD DRAW IN VIOLATION OF APPELLANT'S RIGHT PROHIBITING UNREASONABLE SEARCHES AND SEIZURES UNDER THE UNITED STATES CONSTITUTION.**

**POINT OF ERROR NUMBER TWO: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SUPPRESS THE EVIDENCE OBTAINED BY LAW ENFORCEMENT CONDUCTING AN ILLEGAL BLOOD DRAW IN VIOLATION OF THE APPELLANT'S RIGHT PROHIBITING UNREASONABLE SEARCHES AND SEIZURES UNDER THE TEXAS CONSTITUTION.**

**POINT OF ERROR NUMBER THREE: THE TRIAL COURT UNCONSTITUTIONALLY HARMED APPELLANT WHEN IT REFUSED TO SUPPRESS THE RESULTS OF APPELLANT'S BLOOD ALCOHOL CONTENT THAT WAS ONLY AVAILABLE AS A RESULT OF A BLOOD DRAW TAKEN FOR MEDICAL PURPOSES AND PRODUCED INTO EVIDENCE BY A SHAM GRAND JURY SUBPOENA ISSUED SUBSEQUENT TO INDICTMENT.**

## STATEMENT OF FACTS

On April 6, 2013, Trooper Bures of the Texas Department of Public Safety responded to an automobile accident in

the general area of County Road 2800 just south of 2641.  *Reporter's Record*, Vol. 3 p. 50.  When Bures arrived, there was already a deputy from the Lubbock County Sheriff's Office at the scene.  *Reporter's Record*, Vol. 3 p. 50.  Bures then assumed command of the scene as the investigating officer.  *Reporter's Record*, Vol. 3 p. 50.  Appellant was found in the car in the front seat portion with testimony conflicting as to whether she was in the seat or in the floor board.  Appellant was evaluated at the scene by EMS.  *Reporter's Record*, Vol. 3 p. 68, 69.  Appellant was transported to University Medical Center Hospital with serious injuries. *Id.*

Bures did not ride with Appellant in the ambulance, nor did he immediately follow the ambulance.  In one portion of the testimony Officer Bures indicated that he did not immediately proceed to the hospital. *Reporter's Record*, Vol. 3 p. 82.  Testimony conflicted as to the exact amount of time that elapsed between the ambulance taking Appellant to the hospital and Bures leaving the scene of the accident.  The delay was based on Bures remaining at the scene while the vehicle Appellant was found in was inventoried.  Bures remained at the scene  ten to fifteen minutes despite another law enforcement officer being on scene.  *Id.*

Upon Bures' arrival at the hospital, he approached medical personnel and requested to speak to Appellant.  *Reporter's Record*, Vol. 3 p. 84.  He was initially told that she was in no condition to speak. *Id.*  Bures heard her making comments about drinking and began to form ideas

regarding the need for further investigation into the possibility of intoxication. At some point during Appellant's treatment for injuries, Bures returned to his patrol vehicle, performed a criminal history check on Appellant, and determined that sufficient priors existed for him to order the medical staff to conduct a mandatory blood draw pursuant to the Texas Transportation Code Section 724. Bures returned to the treatment room and instructed Nurse Ryan Temple to conduct a blood draw pursuant to the statute. *Reporter's Record*, Vol. 3 p. 92 During the guilt innocence phase, Bures testified that when Appellant refused to consent to providing a sample, he completed a blood draw pursuant to the authority provided by the mandatory blood draw statute. *Reporter's Record*, Vol. 7 p. 81. The question posed to Bures was asked during trial what he did after Appellant refused to consent to a draw and he stated, "I went ahead and took the blood for a – did a mandatory blood draw." *Reporter's Record*, Vol. 7 p. 81. Later Bures testified that he was concerned that they were giving her fluids/saline and did not know whether or not she was being given narcotics. *Reporter's Record*, Vol. 7 p. 108. Bures testified that the blood draw taken at his demand was obtained at 8:25 p.m. The blood draw occurred forty minutes after Bures arrived at the scene of the accident. Appellant was removed from the car, evaluated by EMS, and taken from the scene by ambulance to University Medical Center. Bures testified that he stayed to oversee an inventory of the car

4

for five to ten minutes, then drove to UMC.  Bures entered the hospital and sought contact with Appellant and was refused by medical personnel.  Bures went to his car to conduct a criminal history inquiry and returned to the room to obtain a mandatory draw as indicated by testimony.  *Reporter's Record*, Vol. 7 p. 81-86.  Testimony indicated that he was concerned about the compromise of the blood evidence, he did not know whether she was being given pain killers, and he did not ask.  *Reporter's Record*, Vol. 3 p. 93.  Bures testified that he did not attempt to get a warrant to obtain a blood sample but was aware of the methods and means of obtaining a warrant for blood for a patient a University Medical Center.  *Reporter's Record*, Vol. 7 pp. 81, 82, 109.   The testimony was clear that Bures did not attempt to procure a warrant.  Bures testified that he had information that it would take between twenty and thirty minutes to obtain a warrant for Appellant's blood.  *Id*.  Bures testified that he delayed leaving the scene of the accident to oversee with the inventory of the vehicle, arrived at the treatment room and asked permission to converse with Appellant.  Bures testified that Appellant was not a suspect of anything until he reached the hospital and heard her answers and smelled the alcohol on her breath.  Bures then stated that based on a criminal history check on his in car computer he discovered that Appellant had a history which formed his basis to obtain a blood sample, but he insisted that the basis of the blood draw was mostly on exigent

5

circumstance relating to the treatment of Appellant. *Reporter's Record*, Vol. 3 pp. 67- 72. Bures testified that he did not investigate if any of his fears regarding the introduction of medications or fluids that might taint the blood evidence either at the time of his formation of some belief as to exigent circumstances or afterwards. *Reporter's Record*, Vol. 3 p. 93.

Appellant objected to the use of the blood secured for use in diagnosis treatment of Appellant in rendering a blood alcohol content for use as evidence at trial. *Reporter's Record*, Vol. 7 pp. 28-32. Testimony showed that the blood drawn and used for medical treatment was only to be used for medical and not legal purposes. *Reporter's Record*, Vol. 3 p. 50. The prosecution caused to have issued a grand jury subpoena for the purposes of using the medical blood draw within the prosecution of Appellant for the offense of DWI. *Reporter's Record,* Vol. 5 p. 26. It appears from the testimony and arguments that the grand jury subpoena for Appellant's medical records was issued well after the grand jury investigation had ended and was in response to an inclination that the mandatory blood test might fall to a constitutional challenge in light of the holdings in *McNeely*. The medical blood draw evidence was used in addition to the blood sample obtained by the mandatory blood draw statute bolstered by claims of exigent circumstances.

# Summary of the Argument

Appellant was involved in a one car accident.  Trooper Bures responded to the accident.  Appellant was transported to the hospital by ambulance where she was treated for serious injuries.  Trooper Bures remained on scene for five to ten minutes then followed Appellant to the hospital.  Trooper Bures indicated that Appellant was not a suspect until statements and evidence arose at the hospital.  Trooper Bures asked for consent to obtain a blood sample.  Appellant refused.  Trooper relied on the mandatory blood draw provisions of the Texas Transportation Code  in conjunction with Appellant's criminal history.  Trooper Bures testified several times that the draw was a mandatory draw.  Since the date of the accident, the mandatory blood draw statute was under great scrutiny.  At the motion to suppress the blood alcohol result obtained as a result of the mandatory draw, Trooper Bures added a claim of exigent circumstances to support his rationale from drawing the blood.  Appellant argues to this Court that the blood draw was illegal and the claim by Trooper Bures is not supported by his testimony or the facts.

Appellant argues that the use of the medical blood sample is constitutionally impermissible based on a reasonable expectation of privacy in her medical r3cords and treatment.  This Court has ruled contrary to her position.  Appellant reqests that this court re-examine the ruling in a similar case and further consider the

7

distinction between the cases that involve the use of grand jury subpoenas in manner that appears to make the usage simply a sham upon the trial courts.

## ARGUMENT AND AUTHORITIES

**POINT OF ERROR NUMBER ONE:  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SUPPRESS THE EVIDENCE OBTAINED BY LAW ENFORCEMENT CONDUCTING AN ILLEGAL BLOOD DRAW IN VIOLATION OF APPELLANT'S RIGHT PROHIBITING UNREASONABLE SEARCHES AND SEIZURES UNDER THE UNITED STATES CONSTITUTION.**

**POINT OF ERROR NUMBER TWO:  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SUPPRESS THE EVIDENCE OBTAINED BY LAW ENFORCEMENT CONDUCTING AN ILLEGAL BLOOD DRAW IN VIOLATION OF THE APPELLANT'S RIGHT PROHIBITING UNREASONABLE SEARCHES AND SEIZURES UNDER THE TEXAS CONSTITUTION.**

\* \* \* \* \* \* \* \* \* \*

**Appellant claims that the conduct of the state actors involved in the investigation and collection of evidence in this case violated her constitutional rights on both the federal and state levels.  Appellant believes that it is appropriate to argue the points of error together and does not believe that doing so violates the prohibition of multifarious arguments within an appellate brief.**

\* \* \* \* \* \* \* \* \* \* \*

**The law surrounding mandatory blood draws developed rapidly after the Appellant's arrest and during the preparation for trial upon the matter.  Multiple**

cases were decided within that State that addressed the constitutionality and effects of rulings made by the United States Supreme Court in *McNeely v. Missouri* would have on the use of the statutes within the Texas Transportation Code mandating the collection of blood samples when persons believed to be intoxicated met certain criteria. A review of the decisions leading to the current state of the law is important because of the light it sheds on the development of the testimony presented in the matter before the trial court and relied upon in the appeal of this case.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const, amend. IV. "The Fourth Amendment protects people, not places." *Terry v. Ohio*, 392 U.S. 1 (1968). The *Terry* opinion confirms that "[t]his inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Id*. at 8-9. The *Terry* Court continued stating, "[W]herever an individual may harbor a reasonable expectation of privacy, he is entitled to be free from unreasonable governmental intrusion." *Id.* at 9. More than a century ago in 1891, the United States Supreme Court stated that "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Id.* (quoting *Union Pac. R. Co. v. Botsford*, 141

9

U.S. 250, 251 (1891)). The United States Supreme Court has recognized "[t]he security of one's privacy against arbitrary intrusion by the police as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Schmerber v. California*, 384 U.S. 757, 766 (1966) (quoting *Wolf v. Colorado*, 338 U.S. 25, 27 (1948)). "Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted." *Terry*, 392 U.S. at 9. The *Terry* Court addressed concerns that the Fourth Amendment would be used in an attempt to expand the protections contemplated by the Court by expressing, "For what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Id.* The regularly accepted exceptions to this warrant requirement include voluntary consent and provable exigent circumstances.

The Thirteenth District Court of Appeals for the State of Texas recently affirmed a trial court's decision to suppress evidence obtained in the absence of a warrant in reliance on the repeat offender statute of the Texas Transportation Code. In affirming the trial court the Thirteenth Court of Appeals stated, "Given the absence of a warrant, the absence of exigent circumstances, and the absence of consent, we agree with the trial court's conclusion that the State failed to demonstrate that the involuntary blood draw was reasonable under the Fourth Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable to this case, as was its burden." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-

10

14 (Tex.Crim.App. Dec 2014). The Thirteenth Court ruled in this manner in a case involving a driver suspected of DWI with multiple previous convictions stating, "In this case, as will often be true when charges of driving under the influence of alcohol are pressed, these [Fourth Amendment issues] . . . arise in the context of an arrest made by an officer without a warrant." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014)(citing Schmerber, 384 U.S. at 768). The *Villareal* Court acknowledged, "Here, there is no dispute that there was "probable cause for the officer to arrest . . . [appellee] and charge him with DWI." *Id.* The Thirteenth Court acknowledged that the trial court specifically found "credible Officer Williams' testimony that the Defendant appeared to be intoxicated based on his red watery eyes, slurred speech, and swaying back and forth." *Id.*

"[E]arly cases suggest that there is an unrestricted 'right on the part of the government always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime.'" *State v. Villareal*, 13-13-253 CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by the Texas Court of Criminal Appeals PD-0306-14) (quoting *Weeks v. United States*, 232 U.S. 383, 392 [1913]) (citing *People v. Chiagles*, 142 N.E. 583, 584 (1923). *Villareal* acknowledged the concept that, "[t]he mere fact of a lawful arrest does not end our inquiry." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi-Edinburg 2014) (affirmed by the Texas Court of

11

Criminal Appeals PD-0306-14).    The *Villareal* Court went on to analyze searches that appear to result from the mere arrest of a person who has been arrested for a DWI with the additional facts that there has been an indication to the officers that multiple previous DWI convictions of the suspect exist stating, "The suggestion of these cases apparently rests on two factors. . . '[F]irst, there may be more immediate danger of concealed weapons or of destruction of evidence under the direct control of the accused.'" *Id*. (citing *United States v. Rabinowitz*, 339 U.S. 56, 72-73 (1950) (Frankfurter, J., dissenting)).  The *Villareal* Court went on to include, "Second, once a search of the arrested person for weapons is permitted, it would be both impractical and unnecessary to enforcement of the Fourth Amendment's purpose to attempt to confine the search to those objects alone." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*,  PD 0306-14 (Tex.Crim.App. Dec 2014). (citing *Chiagles*, 142 N.E. at 584).  Having conducted that analysis, the *Villareal* Court then opined:  "Whatever the validity of these considerations in general, they have little applicability with respect to searches involving intrusions beyond the body's surface." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(citations omitted) (affirmed by the Texas Court of Criminal Appeals PD-0306-14).

"Mandatory administration of a blood test . . . plainly involves the broad apparent reach of a search and seizure under the United States Constitution's Fourth Amendment." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -

12

Edinburg 2014) (affirmed by the Texas Court of Criminal Appeals PD-0306-14). "The important interests in human dignity and privacy protected by the Fourth Amendment prohibit any such intrusions on the mere chance that desired evidence might be obtained." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi - Edinburg 2014) (affirmed by the Texas Court of Criminal Appeals PD-0306-14). The *Villareal* Court went further explaining that the demand for exigent circumstances does not disappear with the mere presence of a state statute implying consent opining that, "In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(citations omitted) (affirmed by the Texas Court of Criminal Appeals PD-0306-14).

Appellant does not expect that the State will argue that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Even the tests contemplated by the Texas Transportation Code plainly constitute searches of 'persons,' and depend initially upon seizures by arrest of 'persons' within the meaning of the Fourth Amendment. The *Villareal* Court stated, "Because we are dealing with intrusions into the human body rather than with state interferences with property relationships or private papers— 'houses, papers, and effects'—[the United States Supreme Court has] . . . writ[t]e[n] on a clean slate." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed

13

by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014)(citations omitted). "The Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.*(citations omitted). The Texas Court of Criminal Appeals explicitly held that the mandatory blood draws were unconstitutional and did not create a legislative exemption to the right of the people to be free from unreasonable searches or seizures under the federal and Texas Constitutions. *State v. Villareal*, PD 03056-14 (Tex.Crim.App. Dec 2014)(affirming *State v. Villareal*, 13-13-253CR (Tex.App --Corpus Christi --Edinburg. 2014)).

As in *Villareal*, while the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of appellee's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself or he was required instead to procure a warrant before proceeding with the test. "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by the Texas Court of Criminal Appeals PD-0306-14). The Fourth Amendment to the United States Constitution is clear as to the requirement "that a warrant be obtained [and] that inferences to support the search be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of

14

ferreting out crime." *Id.* "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.* (citations omitted).

The Texas Court of Criminal Appeals stated that, "[s]earches conducted pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). The Texas Court of Criminal Appeals has "made clear that drawing the suspect's blood pursuant to a search warrant [does]. . . not. . . offend[] the Constitution." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(citing *Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002) (affirmed by the Texas Court of Criminal Appeals PD-0306-14). *Villareal* also opined that "[a] warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014) (affirmed by the Texas Court of Criminal Appeals PD-0306-14)(citing *Skinner v. Railway. Labor Executives' Ass'n*, 489 U.S. 602, 622 (1989). "A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case." *Id.*

Similar to *Villareal*, in this case, there was no warrant; however, "the warrant requirement is subject to exceptions." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014) (affirmed by the Texas Court of Criminal Appeals PD-0306-14) (citing *Missouri v. McNeely*, 133 S.Ct. 1552, 1558

15

(2013). The United States Supreme Court has recognized only certain limited exceptions that trump the freedom and liberty of an individual to "[t]he integrity of an individual's person"—"a cherished value of our society." *Schmerber v. California*, 384 U.S. 757 (1966) ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.") The United States Supreme Court recently restated that "[s]uch an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Missouri v. McNeely,* 133 S.Ct. 1552, 1558 (2013)(quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). *Villareal* acknowledged that drunk driving was a serious problem stating that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). (quoting, *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451 (1990). *Villareal* echoed the concern expressing, "Certainly we do not." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014) (affirmed by the Texas Court of Criminal Appeals PD-0306-14) (citing *McNeely*, 133 S.Ct. at 1565.) "While some progress has been made, drunk driving continues to exact a terrible toll on our society." *Id*. "But the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." *Id.*

16

"Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). In *Schmerber*, the United States Supreme Court held that a police officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber v. California*, 384 U.S. 757 (1966). The officer might believe that "there are special circumstances . . . [and] no time to seek out a magistrate and secure a warrant." *Id*. at 771. If so, then under the precedent of the United States Supreme Court, the Court would be "satisfied that the test chosen to measure . . . appellee's blood-alcohol level was a reasonable one." *Id*. Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. *Id*. However, it bears repeating "[t]hat . . . [the United States Supreme Court has held] that the Constitution does not forbid the States minor intrusions into an individual's body under _stringently_ limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under _other conditions_." *Id*. emphasis added).

The Fourteenth Court of Appeals revisited the matter in *Douds v. State*, 14-12-00642 CR (Tex. App.—Houston(14th Dist June 5, 2014)(unpublished cited for persuasive purposes only)(rehearing en banc) The matter was originally undertaken prior to the decision rendered by the United States Supreme Court in

the matter of *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). In the opinion, the court was very clear that the absence of exigent circumstances or other acceptable exceptions to the warrant requirement would render the evidence seized in violation of a defendant's constitutional rights inadmissible under Texas law. Additionally in *Douds*, the Court discussed the elapse of time between the accident investigation's conclusion and the time of the transportation from the scene and completion of the blood draws and found any explanation to support a warrant exception lacking. *Id.*

In the matter of *Salazar v. State*, 12-13-00192 (Tex.App-Tyler August 29, 2014) (unpublished cited for persuasive purposes only) the defendant was charged with DWI after an officer discovered the defendant in a car which had been driven through a fence and into a pasture. The officers determined that the defendant had at least two prior convictions for DWI. The officers conducted a mandatory blood draw in compliance with Chapter 724 of the Texas Transportation Code. The Tyler Court held that a lack of explanation of effort to obtain a warrant in the absence of recognized exceptions to the warrant requirement was fatal to the admission of the evidence. *Salazar v. State*, 12-13-00192 (Tex.App-Tyler August 29, 2014)(unpublished cited for persuasive purposes only). The *Salazar* Court stated, "In the instant case, the State relied solely on Section 724 and offered no evidence of any other recognized exception to the Fourth Amendment that would have permitted it to have Appellant's blood drawn without a warrant. *Id.* Accordingly, we hold that the trial court abused its discretion in denying Appellant's motion to

suppress." *Salazar v. State*, 12-13-00192 (Tex.App-Tyler August 29, 2014)( unpublished cited for persuasive purposes only).  The *Salazar* court provided references to the state of the law in Texas  stating,

> We recently addressed an issue similar to Appellant's sole issue in *Gentry v. State*.  There, we considered the analyses of several of our sister courts of appeals and likewise held that (1) the implied consent and mandatory blood draw statutory schemes found in the transportation code are not exceptions to the warrant requirement under the Fourth Amendment and (2) to be authorized, the state's warrantless blood draw must be based on a well-recognized exception to the Fourth Amendment. See id., slip op. at 5–6 (citing *Aviles v. State*, No. 04-11-00877-CR, 2014 WL 3843756, at *2–3 (Tex. App.–San Antonio Aug. 6, 2014, pet. filed) (op., not designated for publication); *State v. Ballard*, No. 11-13-00224-CR, 2014 WL 3865815, at *3 (Tex. App.–Eastland July 31, 2014, no pet. h.) (mem op., not designated for publication); *Weems v. State*, No. 04-13-00366-CR, 2014 WL 2532299, at *8 (Tex. App.–San Antonio May 14, 2014, pet. filed) (op., not designated for publication); *Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *1–2 (Tex. App.–Amarillo Apr. 7, 2014, pet. filed) (op., not designated for publication); *State v. Villarreal*, No. 13–13–00253–CR, 2014 WL 1257150, at *11 (Tex. App.– Corpus Christi Jan. 23, 2014, pet. granted) (op., not designated for publication); see also *Aviles v. Texas*, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014).

*Salazar v. State*, 12-13-00192 (Tex.App-Tyler August 29, 2014)(unpublished cited for persuasive purposes only).

     As the testimony based on police reports reflect in the matter before this honorable Court, an attempt was made to demonstrate a recognized exception to the warrant requirement, that of an exigent circumstance, , but no reference to the

existence of the exigent circumstances was made until the testimony of the trooper elicited at the Motion to Suppress hearing.  Multiple officers were present to investigate the accident and secure any warrant that was needed to obtain the blood draw.  The testimony at trial indicates only a five or ten minute delay in Trooper Bures following Defendant to the hospital where the draw could occur,  and further, no delays at the hospital in drawing the blood upon the demand of Trooper Bures were proven.    The testimony relying on reports and call sheets indicate that Trooper  Bures  arrived on scene of the accident at 7:45 p.m.  Appellant was transported to the hospital at around 7:55 p.m., and the blood draw was completed at 8:25 p.m. *Reporter's Record*, Vol. 7 p. 84.  It would be counter-intuitive for the prosecution to claim that delays caused by accident investigation or hospital delays created exigent circumstances that would allow for the blood draw without a warrant.  Testimony revealed that the University Medical Center emergency room facility is equipped with office equipment or forms to allow for an expedient completion of the affidavits and requests for a search warrant to be transmitted to a local judge or magistrate able to grant a search warrant upon presentation of probable cause.  The occurrences in this case demonstrated that the officers failed to seek and secure a search warrant and no facts exist that fulfill the requirements of a recognized exception to the warrant requirement.

The state, in this case, must stipulate that there was no consent as set forth in the testimony and no warrant for the blood draw in this case. Therefore, the burden

of proof shifts to the State to establish that the involuntary blood draw was reasonable under a recognized exception to the Fourth Amendment's warrant requirement. *Kelly v. State*, 204 S.W.3d at 808, 819 n.22 ("[Once] appellee carried this initial burden, . . . the prosecution . . . assumed the burden of proof with the risk of nonpersuasion"); *Ford*, 158 S.W.3d at 492. The Texas Court of Criminal Appeals has recently opined that the mandatory blood draw statute contained within §724 of the Texas Transportation Code is unconstitutional and reliance on that statute will not salvage an unconstitutional search even conducted in good faith reliance on the statute. *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014).

In this case, in light of the recent *Villareal* opinion, the State will not likely argue that it meets its burden and that the trial court properly denied Appellant's motion to suppress because it established that the blood draw was performed pursuant to the repeat offender provision or the transportation of another for medical treatment provision of the mandatory blood draw law, Section 724.012 of the Texas Transportation Code, which provides in relevant part as follows:

(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances If the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

(1) the person was the operator of a motor vehicle or watercraft involved in

an accident that the officer reasonably believes occurred as a result of the offense and

(C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment

(3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person . . .

(B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections. Tex. Transp. Code Ann. § 724.012(b)(3)(B) (emphasis added).

The state must base its argument on the claim of exigent circumstances arising from possible medical treatment provided to Appellant under the judgment of medical personnel that were caring for Appellant on the night of the event. The testimony was clear at the pretrial suppression motion that Trooper returned to his car to run a criminal history check and then returned to the emergency room and ordered the medical personnel to collect a blood sample under the authority of the mandatory blood draw statute. Only after a similar search was conducted in the *McNeely* case and addressed by the United States Supreme Court, did Trooper Bures modify his rationale for collecting the blood sample and claim it was a recognized exception to the warrant requirement as a seizure in the light of exigent

circumstances.  At both the suppression hearing and the guilt innocence phase of the trial, testimony showed that Trooper Bures ordered the medical personnel to draw the blood based on the mandatory blood draw statute but later addressed his concern for exigent circumstance; however, the veracity of his claim fails in that at the suppression hearing Trooper Bures claims to have been concerned about the introduction of narcotics into the blood stream and the effects on future testing, but at the guilt innocence phase the exigency arose from the introduction of additional fluids that would presumptively dilute the BAC in Appellant's blood.   The generation of exigent circumstance months after the reports were written and while ample time existed for the trooper to supplement his report with his concerns about the exigencies of the night created by medical treatments, demonstrate that varying reasons for the exigency, were a direct result of the *McNeely* case and its progeny that would prevent the use of the unconstitutional blood draw (seizure) conducted upon Appellant.        To hold that the Fourth Amendment is applicable to the drug and alcohol testing prescribed by the repeat offender provision of the mandatory blood draw law "is only to begin the inquiry into the standards governing such intrusions." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). (citing *Skinner*, 489 U.S. at 618-19). "For the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Id*.   "What is reasonable, of course, 'depends on all of the circumstances surrounding the search

or seizure and the nature of the search or seizure itself.'" *Id*. (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). (quoting *Delaware v. Prouse*, 440 U.S. 648, 654(1979)).

"In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment." *Id*. "Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Id.* The United States Supreme Court has "recognized exceptions to this rule, however, "when 'special needs', beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Id*. (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)). "When faced with such special needs, . . . [the Court has] not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context." *Id*. The government's interest in regulating the operation of motor vehicles on public roadways to ensure safety, like its interest in the supervision of railroad employees, probationers, regulated industries, and its operation of a government office, school, or prison, "likewise presents 'special

needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). (citations omitted).

Another of the established exceptions to the requirements of both a warrant and probable cause is when valid consent to conduct the search has been granted. *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014)(citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The Texas Court of Criminal Appeals has recognized that "[t]he implied consent law ... is another method of conducting a constitutionally valid search." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014))(citing *Beeman*, 86 S.W.3d at 615.) "The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant." Referring to the mandatory blood draw statute the Texas Court of Criminal Appeals declared, "It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant." *Beeman*, 86 S.W.3d 613, 615 (Tex.Crim.App–2002)(citations omitted). In relevant part, the implied consent statute provides as follows: If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor

vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance. Tex. Transp. Code Ann. § 724.011(a) (West 2011). As the Texas Court of Criminal Appeals has explained, "[t]he implied consent law does just that—it implies a suspect's consent to a search in certain instances." *Beeman*, 86 S.W.3d at 615. It is also clear from the evidence presented in this case that Appellant clearly and definitively withdrew that consent.

The statute provides for implied consent in every circumstance in which a suspect is arrested for DWI. See *Tex. Transp. Code Ann*. § 724.011(a). This statute "does not give officers the ability to forcibly obtain blood samples from anyone arrested for DWI." *Beeman*, 86 S.W.3d at 616. The statute expresses that "[e]xcept as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." *Tex. Transp. Code Ann*. § 724.013 (West 2011). The relevant language in Section 724.012(b) authorizes and, in fact, requires an officer to take a breath or blood sample if a person is arrested for DWI, has two or more prior convictions, and refuses to voluntarily consent to the officer's request to take a breath or blood sample. *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by

*State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). That statute has now been declared unconstitutional by the Texas Court of Criminal Appeals in *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014).

After stipulating that there was no consent, the State can no longer argue that Chapter 724 creates a legislatively valid consent or essentially a statutory waiver of the Fourth Amendment. See *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). The State cannot claim that this legislatively created consent cannot be withdrawn or withheld by certain individual suspects, such as this defendant, who have two or more prior convictions for DWI or persons who have been involved in an accident in which another person has chosen to seek medical treatment. *Id*. To accept this premise would be to deem that the Legislature has the ultimate control over an individual's ability to consent to a warrantless blood draw, in direct contradiction to Aviles, and it has made a decision categorically and conclusively on behalf of all those individuals who have two or more prior convictions for DWI or involved in an accident in which a person chooses to seek medical treatment such that those individuals have no right to refuse to consent which has been prohibited by the Court of Criminal Appeals ruling in *Villareal*. *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014).

Defendant acknowledges that the *McNeely* Court and the *Villareal* lower court demonstrated concern that the drunk driving problem is a national epidemic, and the legal tools in the police's crime-fighting arsenal must keep pace with the

danger posed to the public. *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014)). Defendant realizes that the repeat offender provision of the mandatory blood draw would allow police to obtain scientific evidence that could be of tremendous value to law enforcement and to the State in establishing the guilt of an accused. Regardless of the benefit that the statute provides, Defendant relies upon the language of the United State Supreme Court when it said, "But the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014))(citing *McNeely*, 133 S.Ct. at 1565). The Texas Court of Criminal Appeals in *Villareal* held that the mandatory draw was unconstitutional in the absence of another recognized exception to the warrant requirement. *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014).

In sum, Defendant accepts arguendo for the purpose of the motion to suppress that, in this case, there were the some of the usual signs that are generally associated with intoxication, such as smelling strongly of intoxicants and a rollover automobile accident, from which a reasonable officer could have inferred probable cause to believe that intoxication may be present and the offense of DWI may have been committed. There was some likelihood based on the above assumptions,

accepted arguendo, that probable cause was arguably present and that the officer could have gotten a warrant for the blood draw, but there were no exigent circumstances supported by Bures inconsistent testimony that would have prevented him from getting a warrant. *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(citing *McNeely*, 133 S.Ct. at 1565. "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* Additionally in *State v. Baker,* the 6th Court of Appeals stated the following, "[w]ithout any other evidence of exigent circumstances, such as evidence that it would take *too long* to procure a warrant under these circumstances, the trial court could have reasonably concluded that the State failed to show that the warrantless blood draw was supported by exigent circumstances. *State v. Baker*, 12-12-00092-CR, 2013 WL 5657649 (Tex. App. – Tyler Oct. 16, 2013, pet. granted)(citing *McNeely*, 133 S.Ct. at 1565)(emphasis added). The fact that Bures indicated that he believed it would take twenty to thirty minutes to obtain a warrant and he made no effort to obtain a warrant but procured a sample under the authority of the mandatory blood draw statute in only forty minutes from the time of his arrival on the scene of the accident does not support a claim of exigent circumstance. See *Reporter's Record*, Vol 7. pp. 81, 84.

The officer's sole basis, as contained within the report, for not getting a

warrant was that the repeat offender provision or the person of another being transported for medical treatment provision of the mandatory blood draw law required him to take a blood sample in the absence of defendant's consent and without the necessity of obtaining a search warrant. See Tex. Transp. Code Ann. § 724.012(b). The *Salazar* Court stated, "In the instant case, the State relied solely on Section 724 and offered no evidence of any other recognized exception to the Fourth Amendment that would have permitted it to have Appellant's blood drawn without a warrant. Accordingly, we hold that the trial court abused its discretion in denying Appellant's motion to suppress." *Salazar v. State*, 12-13-00192 (Tex.App-Tyler August 29, 2014 unpublished cited for persuasive purposes only). The same result must occur under the facts of this case wherein the testimony of the officer clearly indicated that he was only moments behind Appellant leaving the scene, had time to visit his car and conduct a criminal history check and the order the medical personnel to obtain a mandatory blood draw, but later at the suppression hearing and trial, Trooper Bures claimed exigent circumstances, albeit, different ones during live testimony. It is unfathomable that the officer did not include the exigencies in his report, but was able to dredge them up from his memory after the constitutionality of the mandatory blood draw teetered on the precipice and since then has been conclusively determined to be unconstitutional by the Texas Court of Criminal Appeals. *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014).

Even though it appears that the statute required the officer to obtain a breath

or blood sample, it did not require the officer to do so without first obtaining a warrant. *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). Actually, the statute does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws. *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014) )(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). Furthermore, Appellant would argue under *McNeely* and *Villareal* that there was no valid "consent" under the Fourth Amendment—whether by the mandatory blood draw law or the implied consent law— and a mandatory blood draw is barred because "[t]here was no consent, no warrant." *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014).

To date, neither the United States Supreme Court nor the Texas Court of Criminal Appeals has recognized the repeat offender or transportation of an involved party to the hospital provision of the mandatory blood draw law, referenced, as a new exception to the Fourth Amendment's warrant requirement separate and apart from the consent exception and the exception for exigent circumstances. In *Beeman*, the Texas Court of Criminal Appeals recognized that these laws do not give police officers anything "more than [what] the Constitution already gives them." *Beeman*, 86 S.W.3d 613(Tex.Crim.App.–2002). Accordingly, this court must conclude that the constitutionality of the repeat offender or transportation of another for treatment provision of the mandatory blood draw law

31

must be conducted in conformance with the previously recognized exceptions to the Fourth Amendment's warrant requirement.

Here, based on the reports completed by law enforcement officers and supplied to the defendant by the State as well as testimony elicited at trial, "there was no consent." Further, there was nothing stopping the officer from obtaining a warrant other than his unwillingness to even expend the effort. The officer did not investigate whether any medications had been given to or were anticipated to be given to Appellant that would skew or adversely effect a blood draw that could be obtained from Appellant by a search and seizure warrant issued by a neutral magistrate that could have been secured by the equipment available to the trooper at the hospital There were no exigent circumstances present that would pass constitutional muster in the absence of any effort by the trooper to timely obtain a warrant. . The reports created by the officers and the hospital indicate that Appellant was involved in an accident that occurred at approximately 7:30 o'clock in the evening. Medical reports indicated that Appellant was transported by EMS to the hospital. The testimony indicates that the trooper followed relatively soon after Appellant was transported by EMS and that law enforcement arrived at the hospital shortly thereafter,. and after waiting a while for medical personnel to continue the medical evaluation and treatment of Appellant, the trooper took the time to return to his vehicle and conducted the criminal history search to satisfy the requirements of Texas Transportation Code §724 that provided for the mandatory blood draw.

This would indicate that no effort to obtain a warrant was made, but further, that the time elapsed from the trooper's presence in the emergency room at the hospital until he was able to establish the criminal history of Appellant was ample time to at least try and secure a warrant. If the trooper candidly believed that exigent circumstances existed, he would have been justified in acting without the effort of satisfying §724 of the Texas Transportation Code and would have proceeded to secure the sample based solely on the existence of exigent circumstances. Appellant believes there are key distinctions between this case and other cases involving warrantless blood draws based on exigent circumstances. Given the absence of a warrant, the absence of exigent circumstances, and the absence of consent, this court must agree with the Court's decision in *Villareal* that the State failed to demonstrate that the involuntary blood draw was reasonable under the Fourth Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable to this case, as was its burden. See U.S. Const, amend. IV; *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014)); *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014)

Based on the testimony about reports completed by law enforcement officers and supplied to the Appellant by the State, there was no consent. Nothing prevented Trooper Bures from obtaining a warrant. There were no verified exigent. The reports created indicate that Appellant was involved in a motor vehicle

accident. The reports further demonstrate that the officers were not rushed or involved in hectic activity at the location discounting any claim or indication of exigent circumstances and Appellant was closely followed to the hospital by law enforcement with only minimal delay. No effort to obtain a warrant was made and no reasonable claim of the presence of exigent circumstances can be validated, especially since the testimony verifies that the amount of time that passed between Bures arrival on the scene of the accident and the time of the "mandatory" blood draw was only forty minutes. Given the absence of a warrant, the absence of exigent circumstances, and the absence of consent, this Court must agree with the Courts' decisions in *Villareal*, *Sutherland,* and *Weems* that the State failed to demonstrate that the involuntary blood draw was reasonable under the Fourth Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable to this case, as was its burden. See U.S. Const, **amend. IV;** *State v. Villareal*, 13-13-253CR (Tex.App.–Corpus Christi -Edinburg 2014)(affirmed by *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014); *Sutherland v. State*, 07-12-00289-CR (Tex.App.—Amarillo, April 7, 2014); *Weems v. State*, 434 S.W.3d 04-13-00366-CR (Tex.App.—San Antonio, (May 14, 2014); *Salazar v. Stat*e, 12-13-00192 (Tex.App-Tyler August 29, 2014)(unpublished cited for persuasive purposes only); *Douds v. State*, 14-12-00642-CR (Tex. App. Houston [14th Dist] June 5, 2014).

Recently, the Seventh Court of Appeals rendered a decision opining that the implied consent provision of the statutes providing for mandatory blood draws and

implied consent law is unconstitutional and the Texas Court of Criminal Appeals likewise held it to be unconstitutional in *Villarreal*. *Sutherland v. State*, 07-12-00289-CR (Tex.App.—Amarillo, April 7, 2014); *State v. Villareal*, PD 0306-14 (Tex.Crim.App. Dec 2014). Additionally on May 14, 2014, the Fourth Court of Appeals in San Antonio issued an opinion in the matter of *Weems v. State*, 434 S.W.3d 655 (Tex.App.--San Antonio 2014). The opinion in *Weems* also opined that the implied consent search conducted on the defendant was not constitutionally permissible based on *McNeely, Aviles, and Sutherland*. *Weems v. State*, 434 S.W.3d 655 (Tex.App.--San Antonio 2014); citing *Missouri v. McNeely*, 133 S.Ct. 1552 (2013); *Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App.— San Antonio 2012), vacated, 134 S.Ct. 902 (2014), *Sutherland v. State*, 07-12-00289-CR (Tex.App.—Amarillo, April 7, 2014). It must be noted that the *Weems* matter involved a fairly serious accident that resulted in a person other than the accused being transported to the hospital. *Weems v. State*, 434 S.W.3d 655 (Tex.App.--San Antonio 2014). The *Weems* court did not rely on the accident as the sole determinative factor in the viability of the search in its constitutional review of the conduct of law enforcement.

*Weems* also discusses a good faith claim by the State as a basis to allow for the admission of the evidence under the good faith claim. The *Weems* court dismissed the state's argument stating:

> Finally, the State argues that the evidence should not be excluded pursuant to the federal exclusionary rule or pursuant to article 38.23 of the Texas Code of Criminal Procedure because the arresting officer relied on the

35

implied consent statute and mandatory blood draw statute in good faith. Under the federal exclusionary rule, if a law enforcement officer relies in good faith on a statute authorizing his warrantless search and the statute is later determined to be unconstitutional, the exclusionary rule does not apply. *Illinois v. Krull*, 480 U.S. 340, 342, 355 (1987). However, constraints do apply to the exception to the exclusionary rule. "A statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws." *Id.* at 355. "Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.*

First, we note that the implied consent and mandatory blood draw statutes do not explicitly provide for a warrantless search. *See Villarreal*, 2014 WL 1257150, at * 11 (explaining that the mandatory blood draw statute "does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws"). Second, we note that there is no such good faith exception found in Texas's exclusionary rule; and Texas can provide more protection to a suspect than federal law. Article 38.23 provides for an exception to the exclusionary rule only when an officer relies in good faith *upon a warrant* issued by a neutral magistrate based on probable cause. *See* Tex. Code Crim. Proc. Ann. art. 38.23(b) (West 2005). It says nothing about an officer's reliance in good faith on a statute. Therefore, we hold that the exclusionary rule applies in this case.

*Weems v. State*, 434 S.W.3d 655 (Tex.App.--San Antonio 2014).

This Court, while not bound by the opinion of the Fourth District Court of Appeals' precedent, should apply the wisdom of the good faith analysis. The evidence obtained as a result of the officer conducting the "mandatory blood draw" must be excluded by the application of the well reasoned rationale of the *Weems*

court. The Texas Court of Criminal Appeals also prohibits the use of the mandatory blood draw in the rendition of the opinion in *Villareal* that followed *Aviles* being vacated by the United States Supreme Court.

Finally the attempt by law enforcement to create exigent circumstances after realizing that the constitutionality of the mandatory draw statute was doomed to fail is analogous to the rational set forth by the United States Supreme Court in *Florida v. Wells* addressing another attempt by law enforcement to claim a recognized exception to the warrant requirement despite the clear intent of the officer conducting the search. In *Florida v. Wells*, the Court stated, "an inventory is constitutionally permissible as long as it is not a 'ruse" for general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S.1, 4, 110S.Ct. 1632, 109 L.Ed 1 (1990). This is analogous to the case at bar because the Court recognized that while an exception may be declared, the evidence must support the claimed exception and the prohibited conduct is not excused by merely claiming that an exception exists. The testimony in this case is clear that Trooper Bures, on the night in question, directed the nurse to obtain the sample pursuant to the mandatory blood draw provision and he only later made the claim that exigent circumstances existed. This is clearly the type of claim the Supreme Court was concerned with in *Florida v. Wells*. The Court's holding was that law enforcement must not be allowed to claim an exception

as a ruse to validate conduct which has been determined to be unconstitutional. This Court must heed the rational of the United States Supreme Court and find that the trial court's failure to suppress the evidence resulting from the law enforcement reliance of the mandatory blood draw statute is error and law enforcement's further attempt to claim exigent circumstances is a ruse intended to validate impermissible conduct and an illegal/unconstitutional search and seizure.

Additionally, presentation of an exigent circumstances reason by the officer at the time of the suppression hearing is analogous to the concerns of set forth in the opinion in *Miller El* as it addressed reasons given in a Batson challenge case. In *Miller El* II, the court stated, "A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller El V. Dretke*, 545 U.S. 231, 252 (2005). This concern by the United States Supreme Court is analogous to the case at bar because it is clear that the trooper specifically relied upon §724 of the Texas Transportation Code because of his efforts in supporting the requirements of the mandatory blood draw language and participating in activities that delayed the process of securing a blood warrant. Bures' delay in staying at

the scene to conduct an inventory, his attempt to converse with Appellant during the diagnosis and pending treatment phase of Appellant hospital visit, his trip to his patrol cruiser to secure a criminal history and then his lack of attempt to secure a warrant in a location that has been specifically equipped to contact a neutral magistrate which he has knowledge is available 24/7 is demonstrative of his reliance solely on the existence of the statutory criteria for a mandatory blood draw. The post-*McNeely* relation of exigent circumstances is the functional equivalent of the mere exercise in thinking up a rational basis or the mere exercise in creating an exigent circumstance. This Court must consider all of the actions taking by Trooper Bures on the night of the accident and compare them to the testimony at the suppression hearing and trial. This Court must then agree with Appellant that the creation of the exigent circumstances rationale to overcome the adverse consequences of negative rulings on the legality and potential constitutionality of the mandatory blood draw statutes. This Court must hold that the mere creation of the exigent circumstances rational is merely a ruse to excuse what the Texas Court of Criminal Appeals has determined to be unconstitutional conduct and designed to circumvent the inevitable exclusion of the blood evidence.

**POINT OF ERROR NUMBER THREE: THE TRIAL COURT UNCONSTITUTIONALLY HARMED APPELLANT WHEN IT REFUSED TO SUPPRESS THE RESULTS OF APPELLANT'S BLOOD ALCOHOL**

**CONTENT THAT WAS ONLY AVAILABLE AS A RESULT OF A BLOOD DRAW TAKEN FOR MEDICAL PURPOSES AND PRODUCED INTO EVIDENCE BY A SHAM GRAND JURY SUBPOENA ISSUED SUBSEQUENT TO INDICTMENT.**

Trial counsel objected to the use of the medically obtained blood sample being procured by a grand jury subpoena in proving up the prosecution's case. Appellant believes that should this Court hold that the trial court erred in allowing the use of the law enforcement blood sample as evidence, Appellant would find herself in the sticky predicament that this Court would find the error to be harmless based on the ruling of this Court in *State v. Huse*, 07-12-00383-CR (Tex.App.—Amarillo 2014)(not published, cited for persuasive purposes only.) In the *Huse* case, this Court addressed the issue of standing and illegality of procuring the medical records in the means used by the prosecution. This Court ruled against issues very similar to those raised by Appellant's counsel in this case. This Court cited *State v. Hardy*, 963 S.W.2d 516 ( Tex.Crim.App. 1997), *Murray v. State*, 245 S.W.3d 37 (Tex.App— Austin 2007)(pet filed), *Tapp v. State*, 108 S.W.2d 459 (Tex.App Houston—2003 pet. ref'd ) as the basis for denying standing in the claim of illegality of procuring the blood alcohol results from medical procedure performed in the treatment of a patient presenting with a medical emergency. This Court also cited *Kennemur* for the same reason. *Kennemur v. State*, 280 S.W.3d 305 (Tex.App.Amarillo 2008, pet.ref'd), cert denied, 556 U.S. 1191, 129 S.Ct. 2005, 173L.Ed.2d 1101 (2009). Appellant disagrees with the premise that she has no standing to preserve the

privacy of her medical records. Appellant also understands that this court will maintain the holding made in the above referenced case. Appellant also understands that such holdings were based on precedent, and this Court is bound to the precedent relied upon to make the rulings in *Huse*; however, Appellant raised the issue to preserve for future appellate review the issue of standing, and the claim of illegal procurement of the records by a sham grand jury subpoena. This Court was careful to include that the original grand jury subpoena issued in the absence of the Grand Jury meeting in *Huse* was challenged by the defendant. The prosecution dismissed the case, and then had a properly obtained grand jury subpoena issued during the pendency of a filing outcome. Appellant proceeds on the basis that this Court had some basis for including such information and informs this Court that the prosecution in the instant matter did not attempt to cure any error by dismissing the case and properly procuring a grand jury subpoena during the pendency of a grand jury "investigation." Any investigation done on the case at bar was completed pre-indictment prior to the presentation of this case before the grand jury. A podt-indictment subpoena was done for the purposes of an end-run around the inevitable fate of the mandatory blood draw statute and its unconstitutionality. Appellant implores this court to suppress the blood obtained by the prosecution by means of a sham grand

**jury subpoena obtained under the guise of a grand jury investigation as improper and unconstitutional. While Appellant understand that this Court is unlikely to reverse its course on similar facts in this case, Appellant must present the issue on Appeal for any possible success before this court or any other court empowered by law to address the issue presented.**

## PRAYER FOR RELIEF

**For the foregoing reasons, Appellant respectfully requests that this Court suppress the results of the mandatory blood draw obtained in reliance on Section 724.012(b) of the Texas Transportation Code. This section of the transportation code is constitutionally invalid on its face based on its disregard for the protections granted by the Fourth Amendment to United States Constitution, and Article1 Sections 9 and 10 of the Texas Constitution. Additionally, this Court must find based on the testimony that no exigent circumstances existed that would allow for the collection of the blood. Finally this court should reconsider the holdings relating to the privacy expectations granted by HIPPA and hold that the blood alcohol content obtained in violation of that expectation should have been suppressed.** This Court must reverse the conviction of Appellant and remand it to the trial court for proceedings consistent with the relief granted by this Court.

Respectfully submitted,
Kelly Clark

Attorney-at-law
1401 Crickets
Lubbock, TX 79401
806 765-9977
Email:
kcdiscoverylbb@sbcglobal.net
Attorney for the Appellant,
Rex Ann Baker

By /S/ Kelly Clark

KELLY CLARK

Texas State Bar No. 00790467

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Brief For the Appellant has been mailed to the Jeffrey Ford, Lubbock County Assistant District Attorney, PO Box 10536, Lubbock, Texas, 79408, attorney on appeal for the State of Texas on this the 20th day of January, 2015.

/S/ Kelly Clark
Kelly Clark

## CERTIFICATE OF WORD COUNT

This is to certify that a true and correct count of words contained within Appellant's brief as counted by the word processing program used to generate the document is twelve thousand six hundred fifty (12,650). The count of words was undertaken on this document on its date of filing this the 20th day of January, 2015.


/S/ Kelly Clark
Kelly Clark